## STREIT *v.* LAUTER.

*(Circuit Court, D. Indiana. 1882.)*

1. PATENT—EFFECT OF ABANDONING CLAIM.

Where, on an original application for a patent for an improvement in rocking-chairs, the claim for a rigid connection with the rocker was abandoned as faulty, and a pivotal connection substituted, the patentee is not entitled to a reissue embracing what he discarded, even if he was the first to discover the rigid connection.

2. SAME—REISSUE—CLAIM, WHEN VOID.

Where a claim on an application for a reissue contains matter not embraced in the original patent, it is void.

3. SAME.—CLAIM TOO NARROW—REMEDY LOST BY DELAY.

If the original claims were too narrow to secure to the patentee the full benefit of his discovery, the mistake was apparent at the time the patent issued, and the granting of the reissued patent with broader claims, on an application made after the lapse of almost five years, was unauthorized.

In Equity.

*James Moore,* for complainant.

*Burns & Denny,* for respondent.

GRESHAM, D. J.   This suit is brought to enjoin the defendant from infringing reissued letters patent granted to plaintiff, January 13, 1880, for improvement in rocking-chairs, and for an account of profits, etc.

The specifications and claims read thus:

"My invention relates to a class of chairs, cribs. etc., made to vibrate on rockers resting on a platform.   The invention consists in attaching the rocking member to the platform by means of an elastic retaining brace secured to the platform and connected to the rocking frame by horizontal pivots, so that the rocking frame may freely vibrate, while at the same time it will be prevented from slipping and turning upon the platform.   It consists also in so swiveling a flexible metal retaining brace to the chair as to permit the chair to vibrate without fretting the spring brace.   It further consists of a means of securing the flexible metal retaining brace to the platform upon which the rockers rest and vibrate, consisting of elastic or yielding bearings, between which the spring brace passes, and which are secured with the spring brace to the platform.   It also consists of hinged leaves upon the ends of the springs, swiveling upon bolts in the rockers.   It also consists in securing a flat metal retaining brace centrally upon the platform, and securing its upturned ends to the inner sides of the rockers at some distance above the platform, so that the brace may yield when the rockers are in motion.   I thus avoid slotting the ends of the spring through which the bolts pass into the rockers, and hence avoid scraping and noise when the rockers are in motion.   It finally consists in a safety rod or stop arranged above the brace, so as to overhang it from the center in each direction and prevent it from vibrating too far.

"Figure 1 is a prospective view of my improvement. Figure 2 is a section through the same. A is the platform upon which rests the chair-rocker frame, B. C is the flexible retaining brace, which is secured to the rocker frame, B, by means of bolts, *b*, passing through the hinged leaves, *c*, *c*, and bolted loosely to the rockers, so as to allow said leaves to swivel. D, D', are elastic bearings, in which the brace, C, rests, and which are secured, with the brace, to the platform by means of bolts, *a*, *a*'. Resting over and secured to the bearings, D, D', is a safety rod, E, to prevent the brace from vibrating too far, and to relieve the brace from strain should the chair be lifted. This safety rod extends from the point where it is secured in each direction to overhang the brace, and give it a long bearing when the chair is lifted by the rocking frame. As the rocker frame, when in motion, carries the bolts, *b*, *b*, alternately forward and back of the vertical center of brace C, (which is their normal position when the rocker frame is at rest,) the retaining brace is subject to torsional strain. In order to avoid fretting or snapping the spring, I have provided the elastic bearings, D, D', which permit the brace to turn or have a rocking motion coincident with the motion of the rocking frame. It is also evident that in rocking the spring is subjected to a tensile strain, as the points connected to the rocking frame must rise and fall with it, thus alternately increasing and shortening the distance between the central connection of the brace to the platform, and its end connections to the rockers, to avoid fretting or snapping the spring under this strain.

"I have provided the hinged leaves, *c*, *c*, upon each end, which permit the elbows of the brace to work freely without the slightest danger of being fractured.

"It will thus be seen that by my invention the rocker frame is retained at all times in proper position upon its platform without additional guides, which it is permitted to freely rock without undue strain or friction.

"The spring, as shown, is applied to a rocking-chair; but when applied to a child's crib, the distance between the rockers being much greater, I use two retaining springs, C, having separate bearings, D, D', and separate stops, E, to prevent the springs from vibrating too far.

"I claim—

"(1) The platform, A, and rocker frame, B, in combination with an elastic retaining brace, as C; said brace passing transversely across the platform, secured centrally thereto, and having its ends connected by horizontal pivots with the rocking frame, substantially as described.

"(2) The combination, substantially as specified, of platform, A, rocker frame, B, spring retaining brace, C, and bolts, *b;* said brace being secured to the platform and swiveled upon said bolts in the rockers.

"(3) The platform, A, and rocker frame, B, in combination with the elastic bearings, D, D', and brace or braces, C, as specified.

"(4) The platform, A, and rocker frame, B, in combination with the brace or braces, C, which are centrally connected to the platform, and hinged leaves, *c*, *c*, substantially as specified.

"(5) The combination, substantially as hereinbefore set forth, of platform, A, rocker frame, B, and a flexible metal retaining brace, as C, said brace being

centrally secured to the platform and having upturned ends, which are connected to the inside of the rockers.

" (6) In combination, the platform, A, rocker frame, B, retaining brace, C, and stop, E, said stop being secured above the brace, C, to longitudinally overhang the brace in each direction from the center, so as to protect said brace when the frame is lifted and prevent said frame from vibrating too far, substantially as specified.

" (7) The combination, substantially as specified, of a rocking frame made to vibrate upon a platform, and the platform upon which it rests and vibrates, with a flexible metal retaining brace, as C, arranged transversely between the rockers and secured to while elevated above the platform, and connected to the rocker frame, substantially as specified."

It is alleged that the defendant has infringed the first, fifth, sixth, and seventh clauses. The answer sets up want of novelty, non-infringement, and that the reissued letters contain new matter.

The specifications and claims in the original letters which were issued January 19, 1875, read thus:

"My invention relates to a class of chairs, cribs, etc., made to vibrate on rockers resting on a platform, and secured thereto by flat metal bars, and consists—*First*, of a peculiar means of securing the flexible metal retaining brace or spring to the rockers, said means consisting of a hinged leaf upon the ends of the spring swiveling upon bolts in the rockers; *second*, of a means of securing above-mentioned flexible retaining brace to the platform upon which the rockers rest and vibrate, consisting of elastic bearings, between which the spring passes, and which are secured by bolts. My whole invention furnishes a means of attachment which will not so fret the spring when in motion as to cause it to fracture, and thereby an important fault in the old rigid connection is remedied.

" Figure 1 is a perspective view of my improvement. Figure 2 is a section through same.

"A is the platform upon which rests the chair-rocker frame, B. C is the flexible retaining brace, which is secured to the rocker frame, B, by means of bolts, *b*, passing through the hinged leaves, *c, c*, and bolted loosely to the rockers, so as to allow said leaves to swivel. By thus securing the ends of the brace to the rockers by means of the hinged leaves, *c, c*, which swivel on the bolts, *b*, I provide against the fretting of the spring, and ultimate fracture of the same. For a similar purpose I secure the middle of the spring or brace to the platform, A, by means of elastic bearings, D, D', in which it rests, said bearings being secured with it to the platform by means of bolts, *a, a'*. Resting over and secured to the bearings, D, D', is a safety rod, E, employed to prevent the brace from vibrating too far. As the retaining brace, C, is subjected to a torsional as well as tensile strain when the rockers are in motion, the edges of the bearings, D, D, were they firm, would tend to wear and fret the brace, and finally cause it to snap, while being, as they are, of elastic material, they give sufficiently under pressure to destroy any sharp edge which they might otherwise present to the spring.

" The spring, as shown, is applied to a rocking-chair, but when applied to a child's crib, the distance between the rockers being much greater, I use two retaining springs, C, having separate bearings, D, D, and separate stops, E, to prevent the springs from vibrating too far.

"I claim (1) the platform, A, and rocker frame, B, in combination with the brace or braces, C, which are centrally connected to the platform and hinged leaves, c, c, substantially as specified. (2) The platform, A, and rocker frame, B, in combination with the elastic bearings, D, D, and brace or braces, C, substantially as specified."

A patent issued to W. H. Earnst, June 25, 1872, for new and useful improvements in cradles, and on the twentieth of October, 1874, a patent issued to C. S. Chadeayne for improvements in rocking-chairs. In his application for a reissue the complainant first described his retaining brace, or spring, as "secured to" the rockers. This application was rejected because the spring was "secured to" the rockers in both the Earnst and Chadeayne patents. The complainant then amended his application, describing his spring as "pivotally connected" with the rockers. This application was rejected because the spring was "pivotally connected" with the rockers in the Earnst patent. The complainant again amended his application, this time describing his spring as "having its ends connected by horizontal pivots to the rocking frame," and this description seems to have been satisfactory to the examiner. The respondent omits the hinged leaves and the elastic bearings in his device. The ends of his spring are upturned, these upturned ends are rigidly bolted to the rockers, and the spring rests flat upon the platform and is there rigidly bolted. The ends of the spring are not "connected by horizontal pivots to the rockers," and the first, sixth, and seventh claims are not, therefore, infringed. There is a wide difference between the respondent's rigid connection which the complainant abandoned as faulty, if he ever had any right to it as part of his invention, and a pivotal connection.

The fifth claim clearly contains matter not embraced in the original patent, and it is for that reason void.

The merit of the complainant's invention, as it was described in his original specification, consisted in the peculiar means by which he attached the flexible brace or spring to the rockers and to the platform. Hinged leaves were attached to the ends of the spring and swiveled on bolts in the rockers, and the spring was secured between elastic bearings to the platform. After speaking in the specification of the essential features of his invention, the patentee proceeds:

"My whole invention furnishes a means of attachment which will not so fret the spring when in motion as to cause it to fracture, and thereby an important fault in the old rigid connection is remedied."

The hinged leaves and the elastic bearings are shown in the drawings which accompany both the original and reissued patents.

Having declared that the merit of his invention consisted in making an attachment that would not fret the spring and cause it to fracture, as the old rigid connection did, the patentee was not entitled to a reissue embracing what he had discarded as faulty, even if he was the first to discover the rigid connection. There was no mistake in the description of the complainant's invention in the original patent, and in the reissue it is obvious that there was an effort to embrace the rigid connection which was discarded in the first instance. But waiving all that has thus far been said against the complainant's right to a decree, he lost his right to a reissue, if he was ever entitled to one, by unreasonable delay.

If the original claims were too narrow to secure to the patentee the full benefit of his discovery, the mistake was apparent at the time the patent issued, and the granting of the reissued patent, with broader claims, on an application made after the lapse of almost five years, was unjust to the public and unauthorized. *Miller* v. *Bridgeport Brass Co.* 21 O. G. 201; *James* v. *Campbell*, Id. 337.

Bill dismissed for want of equity.